IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| BEIJING ZHONGYI ZHONGBIAO ELECTRONIC INFORMATION TECHNOLOGY CO. LTD., <br><br> PLAINTIFF, <br><br> VS. <br><br> MICROSOFT CORPORATION AND WAL-MART STORES, INC., <br><br> DEFENDANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.  12-CV-4077 |

# **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

    A. The Pre-License Memoranda ....................................................................2

    B. The License Agreement.............................................................................3

    C. The Non-Final Chinese Trial Court Ruling and Pending Appeal.................4

    D. Zhongyi's Allegations ...............................................................................5

III. ARGUMENT..........................................................................................................6

    A. Washington Law Governs the Scope of the License. .................................7

    B. The License Grants Microsoft a License to Integrate the Fonts into *Any* Microsoft Products.....................................................................................8

    C. Although Washington Law Bars Considering Them, the Pre-License Memoranda Confirm the Plain Meaning of the License. ............................11

    D. The Chinese Trial Court's Ruling Is Wrong, Not Final, and Does Not Bind this Court .................................................................................................13

IV. CONCLUSION ....................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 *(*2009)..................................................................................................6

*Atchley v. Pepperidge Farm, Inc.*,
   2008 WL 2074035 (E.D. Wash. May 14, 2008).................................................................12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................6

*Cicle v. Chase Bank USA*,
   583 F.3d 549 (8th Cir. 2009) ............................................................................................7

*Crane v. Poetic Prods.*,
   351 Fed. App'x. 516 (2d Cir. 2009) ................................................................................15

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
   905 F. Supp. 169 (S.D.N.Y. 1995) ..................................................................................15

*Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*,
   509 F.3d 512 (8th Cir. 2007) .......................................................................................7, 8

*Hilton v. Guyot*,
   159 U.S. 113 (1895)........................................................................................................15

*King Cnty. v. Merrill Lynch & Co.*,
   2012 U.S. Dist. LEXIS 87734 (W.D. Wash. June 25, 2012) .............................................9

*M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*,
   616 F.3d 872 (8th Cir. 2010) ............................................................................................6

*Miller v. Redwood Toxicology Lab., Inc.*,
   688 F.3d 928 (8th Cir. 2012) ............................................................................................7

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ..........................................................................................6

*Yountville Investors, LLC v. Bank of Am., N.A.*,
  2009 WL 2342462 (W.D. Wash. July 28, 2009) .................................................12

### WASHINGTON STATE CASES

*Brackett v. Schafer*,
  41 Wash.2d 828, 252 P.2d 294 (1953) ............................................................10

*Hearst Commc'ns, Inc. v. Seattle Times Co.*,
  154 Wash.2d 493, 115 P.3d 262 (2005) ...........................................9, 11, 13, 14

*State Dep't of Corr. v. Fluor Daniel, Inc.*,
  160 Wash.2d 786, 161 P.3d 372 (2007) ............................................................8

*Warner v. Design & Build Homes, Inc.*,
  128 Wash. App. 34, 114 P.3d 664 (2005) .........................................................9

### INTERNATIONAL STATUTES

Civil Procedure Law of the People's Republic of China, 2007 China Law
  LEXIS 5609, Article 141 (adopted Apr. 9, 1991) ............................................14

### RULES

Rule 12(b)(6) .................................................................................................6, 7, 15

### OTHER AUTHORITIES

4-17 Nimmer on Copyright § 17.02 .....................................................................14

4-17 Nimmer on Copyright § 17.05 .....................................................................14

## I.   INTRODUCTION

Plaintiff Beijing Zhongyi ZhongBiao Electronic Information Technology Co. Ltd. ("Zhongyi") alleges Microsoft's use of certain Chinese language type fonts in certain Microsoft products infringes its copyrights.  In its Complaint, Zhongyi admits it licensed the fonts to Microsoft.  It claims, however, that the license extended *only* to Microsoft's Windows 95 operating system—not to any later Windows versions or other Microsoft products.  In other words, Zhongyi asserts Microsoft entered into an agreement that required it to re-license the same fonts every time it issued a new Windows version or any other updated product.

The font license agreement, however, categorically negates Zhongyi's claim that the parties entered into such an illogical arrangement.  The agreement "grants to Microsoft a perpetual, non-exclusive, worldwide, irrevocable, license" to (1) use, copy, and sell the fonts (including any derivative work thereof) and (2) "do any other act … necessary in order for [Microsoft] to engage in the full commercial exploitation of *any* Licensed Product," which the license defines as "*each Microsoft software product … into which the Fonts are integrated*." (Emphasis added.)  Because the plain language of the license agreement thus grants Microsoft a license to integrate the fonts into *all* Microsoft products, Zhongyi's copyright claim fails as a matter law.

## II. FACTUAL BACKGROUND

### A. The Pre-License Memoranda

In December 1994, Microsoft and the People's Republic of China (through a government ministry) signed a Memorandum of Understanding ("MOU") for developing a Chinese version of Microsoft's pioneering operating system, Windows 95.  Rummage Decl., Ex. 1.  The MOU called for a Chinese version of Microsoft's operating system "fully compatible with Microsoft's world-wide Windows product engineering and design standards and … conform[ing] to the standards of Chinese language and characters and related Chinese information technology."  *Id.* § 1.  The MOU also stated that "Microsoft will endeavor to ensure that the Chinese version of Windows 95 is compatible with *future versions* of Microsoft Windows™ Chinese version."  *Id.* § 7 (emphasis added).

In September 1995, Microsoft and the Chinese government signed a Supplementary MOU that recommended certain Chinese "Development Partners" to develop and license Chinese fonts for the Windows operating system and set forth basic terms for those licensing agreements.  *Id.*, Ex. 2.  The Supplementary MOU identified a predecessor to Zhongyi as a Development Partner for certain Chinese fonts, including the two fonts at issue.  *Id.*, App. A § A (listing Song and Hei fonts); Compl. ¶ 2 (alleging Song and Hei fonts).  It also provided that "[e]ach

Font License Agreement with an agreed Chinese Development Partner" must contain certain "Standard Terms":

1. The agreement shall be a three-party agreement between [China], Microsoft and the Chinese Development Partner. …

2. The agreement shall include a license to Microsoft to use the relevant technology in *all Microsoft products* designated by Microsoft.

3. The agreement shall contain a sufficiently *broad license* to permit Microsoft to have *all necessary use* of the relevant technology, including, but not limited to the right to … *create improvements and derivative works* based on the licensed technology.

4. The agreement … shall terminate if the Software and *all other Microsoft products* in which the relevant technology have been included are withdrawn from the market. Microsoft … shall pay US$1.2 in respect of each copy of the Software *or other Microsoft product* incorporating the relevant technology which is distributed by Microsoft, up to a maximum of US$500,000.

Rummage Decl., Ex. 2, App. A §§ B.1–4 (emphasis added).

### B. The License Agreement

In November 1995, Microsoft, Zhongyi, and China signed a license agreement ("License"). Rummage Decl., Ex. 3. In the License, Zhongyi "grants to Microsoft a perpetual, non-exclusive, worldwide, irrevocable, license to":

(i) use, modify, translate, and create *derivative works based upon the Fonts* in object and source code form;

(ii) reproduce, distribute or license (directly or indirectly), or sell, rent or lease *copies of the Fonts and/or derivative works* thereof in object and source code form;

(iii) to do *any other act in respect of the Fonts* which is necessary in order for [Microsoft] to engage in the *full commercial exploitation of any Licensed Product*; and

(iv) sublicense to third parties the rights described in (i), (ii) and (iii) above.

*Id.* § 2.1 (emphasis added).[1]  The agreement defined the "Licensed Product" as "*each Microsoft software product* … into which the Fonts are integrated." *Id.* § 1 (emphasis added).

The License contained an integration clause making clear that the License controlled, and not any preliminary documents leading to the License:  "This Agreement is the entire agreement by and among Microsoft, [China], and [Zhongyi] regarding its subject matter, and supersedes any prior agreements among the parties relating thereto." *Id.* § 11.2.  The License also contained a Washington choice-of-law and forum selection clause:  "This Agreement is governed by the laws of the State of Washington and the parties hereby consent to the jurisdiction of the state and federal courts sitting in the State of Washington." *Id.* § 11.1.

### C. The Non-Final Chinese Trial Court Ruling and Pending Appeal

In 2007, Zhongyi sued Microsoft in The First Intermediate People's Court of Beijing for The People's Republic of China, alleging Microsoft's use of the two fonts covered by the License infringed Zhongyi's Chinese copyrights under Chinese copyright law.  Wong Decl., Ex. A; *see* Rummage Decl. ¶ 5, Ex. 4.

---

[1] The "Fonts" covered by the 1995 License are the Zhongyi SunTi (also known as SongTi) and HeiTi True Type Fonts. *Id.*, Schedule A.

Despite the broad language of the License, Zhongyi claimed it granted Microsoft a license to use the fonts *only* in Windows 95 and not in any future Windows versions or Microsoft products.  Wong Decl., Ex. A, at 7.  Applying the "Contract Law of the People's Republic of China," not Washington law as the License required, the Chinese trial court agreed with Zhongyi.  *Id.* at 8.  The court acknowledged the scope of the License would normally be "based on the specifications of the licensing contract concluded by the two parties"—implicitly acknowledging that the License did *not* contain the limitation on which Zhongyi relied.  *Id.*  But rather than apply the contract language, the court found the Supplementary MOU made the case "special" and interpreted the License based on that prior MOU.  *Id.*  Because the Supplementary MOU referred to Windows 95 (the new Windows operating system in existence at the time), the court "believe[d]" the License was "limited to Windows 95 Chinese version."  *Id.*

Microsoft timely appealed the trial court's ruling to the High People's Court of Beijing of the People's Republic of China.  That appeal remains pending.

### D.   Zhongyi's Allegations

In July 2012, Zhongyi filed this lawsuit, claiming various Microsoft products infringe its copyrights in the fonts covered by the License.  Compl. ¶¶ 31–41.  Specifically, Zhongyi claims eight Microsoft Windows versions use Chinese fonts that infringe its copyrights.  *Id.* ¶ 37.  Relying on the non-final Chinese trial

court's ruling, *id.* ¶¶ 21–28, Zhongyi alleges the License permitted Microsoft to use the fonts "only in the Windows® 95 Chinese version." *Id.* ¶ 20. According to Zhongyi, Microsoft's use of the fonts in products other than Windows 95, including any later Windows versions, infringes its copyrights. *Id.* ¶¶ 31–49.

### III.   ARGUMENT

Rule 12(b)(6) exists to weed out undeserving complaints ***before*** parties engage in expensive discovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level … [and cross the] line between possibility and plausibility of entitlement to relief." *Id.* at 555–57 (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 *(*2009). And "[w]here, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc*., 616 F.3d 872, 876 (8th Cir. 2010) (affirming dismissal where contract language barred claim "on which [plaintiff's] complaint is based"); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (court need not accept as true allegations "contradicted by documents referred to in the complaint").

In ruling on a motion to dismiss under Rule 12(b)(6), the court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, n.3 (8th Cir. 2012) (citation omitted).  This Court may therefore consider the MOU, Supplementary MOU, the License, and the Chinese trial court ruling, all of which Zhongyi's Complaint describes and incorporates by reference.  *See* Compl. ¶¶ 3, 19, 20–28.

Because the License refutes Zhongyi's claims, Microsoft and Walmart ask the Court to dismiss the Complaint.

### A.  Washington Law Governs the Scope of the License.

The License between Microsoft and Zhongyi contains a Washington choice-of-law clause, providing that the License "is governed by the laws of the State of Washington."  Rummage Decl., Ex. 3 § 11.1.  "Federal courts sitting in diversity apply the choice-of-law rules of the forum state."  *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009).  Arkansas courts honor choice of law clauses, as long as "the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state."  *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007).

Here, Washington law "is reasonably related" to the license because Microsoft (the licensee) is incorporated and headquartered in Washington, and the agreement covers products designed, developed, and integrated with the relevant fonts at Microsoft's Washington headquarters.  *See* Compl. ¶ 10; *Guardian Fiberglass*, 509 F.3d at 515 (chosen law had "reasonable relationship to [the] business transaction" where one party was based in chosen state and administered the contract's program there).  The Court should honor the parties' choice of law.

### B. The License Grants Microsoft a License to Integrate the Fonts into *Any* Microsoft Products.

Under Washington law, contract interpretation requires the court "to carry out the intent of the parties as manifested … by the parties' own contract language." *State Dep't of Corr. v. Fluor Daniel, Inc.*, 160 Wash.2d 786, 795, 161 P.3d 372 (2007).  Washington courts follow the objective theory of contracts:

> We attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.  We impute an intention corresponding to the ***reasonable meaning of the words used***.  Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the ***actual words used***.  We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.  ***We do not interpret what was intended to be written but what was written***.

*Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 115 P.3d 262, 267 (2005) (internal citations omitted) (emphasis added).  Courts "should not, and

cannot, rewrite the clear agreement of the parties." *Warner v. Design & Build Homes, Inc.*, 128 Wash. App. 34, 42, 114 P.3d 664 (2005).

Here, the inquiry "begins and ends with the ordinary, usual, and popular meaning of contractual language." *King Cnty. v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 87734, at *12 (W.D. Wash. June 25, 2012) (enforcing contract as written). The plain language of the License leaves no ambiguity about its scope. In the section titled, "**License Grant**," Zhongyi expressly "grants to Microsoft a *perpetual*, non-exclusive, worldwide, irrevocable, license to"

> (i) use, modify, translate, and create ***derivative works based upon the Fonts*** in object and source code form;
>
> (ii) reproduce, distribute or license (directly or indirectly), or sell, rent or lease ***copies of the Fonts and/or derivative works*** thereof in object and source code form;
>
> (iii) to do any other act in respect of the Fonts which is necessary in order for [Microsoft] to engage in the ***full commercial exploitation of any Licensed Product***; ***and***
>
> (iv) sublicense to third parties the rights described in (i), (ii) and (iii) above.

Rummage Decl., Ex. 3 § 2.1 (emphasis added).[2] The "Licensed Product" referred to in clause (iii) includes "***each Microsoft software product*** … into which the Fonts are integrated." *Id.* § 1 (emphasis added).

The parties could not have made the language any more clear. Clauses (i) and (ii) of Section 2.1 grant Microsoft a perpetual right to use the fonts, and do not

---

[2] The License lists these clauses in the conjunctive, each granting Microsoft separate rights.

tether that right to "Licensed Products" or even Microsoft products generally.  And clause (iii), incorporating the "Licensed Product" definition, permits Microsoft to "do any other act in respect of the Fonts which is necessary in order for [Microsoft] to engage in the full commercial exploitation of any Licensed Product [i.e., under §1, each Microsoft software product into which the Fonts are integrated]."  Nothing limits the License to a specific Microsoft product or group of products.  Indeed, the words "Windows 95" do not appear *anywhere* within the terms of the agreement.  And while those words do appear in the recitals, settled Washington law makes clear that the "recitals may be resorted to in aid of construction *only* where there is an ambiguity in the operative portion of the agreement."  *Brackett v. Schafer*, 41 Wash.2d 828, 834, 252 P.2d 294 (1953) (emphasis added).  Because the explicit language of the License has no ambiguity, the Court has no reason to look to the recitals.  (In any event, even the recitals confirm Zhongyi licensed the fonts "to be used for Microsoft Windows 95 PRC version *or any other Microsoft product*" and "to be incorporated in Chinese language software *to be released in the People's Republic of China*."  Rummage Decl., Ex. 3, 2nd & 4th Recitals (emphasis added).  Nothing in the recitals suggests a *limitation* to Windows 95.)

Further, by consistently using generic language to describe the licensed product, the parties expressed their intent to cover *all* Microsoft products, even though they could not identify their specific names.  *See* Rummage Decl., Ex. 3,

2nd Recital (license for "software *to be* released in the People's Republic of China by Microsoft"), 4th Recital ("or *any other* Microsoft product"), § 1("*each* Microsoft software product"), § 2.1(iii) ("*full* commercial exploitation of *any* Licensed Product"), § 3.1 ("Microsoft may include the Fonts in *any* Microsoft product in pre-release form") (all emphasis added).

Washington law requires the Court to apply the "reasonable meaning of the words used" in the License. *Hearst Commc'ns*, 115 P.3d at 267. The only reasonable meaning of the words in the License shows that it covers all products into which Microsoft chooses to integrate the fonts. Because the License's express language permits the conduct that forms the basis for Zhongyi's suit, the Complaint does not and cannot state a claim.

### C. Although Washington Law Bars Considering Them, the Pre-License Memoranda Confirm the Plain Meaning of the License.

Under Washington law, the Court should not construe the License in light of the MOUs between Microsoft and the Chinese government (*not* Zhongyi) because the integration clause makes clear the License represents the parties' entire agreement and "supersedes any prior agreements among the parties." Rummage Decl., Ex. 3 § 11.2. "Under Washington's parol evidence rule, this integration clause in the [license] agreement bars the consideration of" extrinsic evidence regarding the scope of the license—such as the MOUs. *Yountville Investors, LLC v. Bank of Am., N.A.*, 2009 WL 2342462, at *4 (W.D. Wash. July 28, 2009); *see*

*also Atchley v. Pepperidge Farm, Inc.*, 2008 WL 2074035, at *8 (E.D. Wash. May 14, 2008) (under Washington law, "extrinsic evidence is inadmissible to 'add to, subtract from, modify, or contradict' the terms of a fully integrated contract") (quoting *Berg v. Hudesman*, 115 Wash.2d 657, 670, 801 P.2d 222, 230 (1990)).

But even if the Court looks to extrinsic evidence to discern the scope of the License, the memoranda that preceded the License confirm the plain language of the License—i.e., the parties intended to (and, in fact, did) license the fonts for use in *all* Microsoft products.  For example, although the MOU referred to "Windows 95," Microsoft's new operating system at the time, it also contained a provision that *required* Microsoft to "ensure that the Chinese version of Windows 95 is compatible with *future versions* of Microsoft Windows™ Chinese version." Rummage Decl., Ex. 1 § 7 (emphasis added).  And the Supplemental MOU, which set forth the "Standard Terms" Microsoft and China agreed to include in any license agreements, contemplates a license covering *all* Microsoft products.  It states the license agreements with Chinese vendors (such as Zhongyi) must include:  (1) "a license to Microsoft to use the relevant technology in *all Microsoft products* designated by Microsoft"; (2) "a sufficiently *broad license* to permit Microsoft to have *all necessary use of the relevant technology*"; and (3) a provision terminating the license "if the Software and *all other Microsoft products* in which the relevant technology have been included are withdrawn from the

market." Rummage Decl., Ex. 2, App. A §§ B.2–4 (emphasis added). This language anticipates a license for *all* Microsoft products—not just Windows 95.

### D. The Chinese Trial Court's Ruling Is Wrong, Not Final, and Does Not Bind this Court

Zhongyi's copyright infringement claim relies heavily on a Chinese trial court ruling favorable to Zhongyi. *See* Compl. ¶¶ 3, 20–28, 35, 38–39. But the Chinese action has no impact on this suit, for the following reasons:

*First*, the Chinese court applied the wrong law. By agreement, Washington law governs the key issue on Zhongyi's infringement claim—the scope of the License. But the Chinese court instead applied the "Contract Law of the People's Republic of China," not Washington law, without explaining why it ignored the parties' agreement. *See* Wong Decl., Ex. A, at 8.

*Second*, the Chinese court violated fundamental principles of Washington contract interpretation. For example, rather than "focusing on the objective manifestations of the agreement" and "giv[ing] words in [the License] their ordinary, usual, and popular meaning," *Hearst Commc'ns*, 115 P.3d at 267, the Chinese court (1) found the case "special" because of the Chinese government's involvement, (2) ignored the plain language of License, and (3) looked almost exclusively to selective portions of the Supplemental MOU (what it called the "Government Agreement") to determine what it "believe[d]" was the intended scope of the License. *See* Wong Decl., Ex. A, at 8. This directly contradicts

controlling Washington law, which does not "interpret what was intended to be written but what was written." *Hearst Commc'ns*, 115 P.3d at 267.

***Third***, the Chinese court's finding that Zhongyi had protectable copyrights under Chinese law and that Microsoft infringed Chinese copyright law do not determine those same issues under United States copyright law. "The applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national, or in which the work was first published." 4-17 Nimmer on Copyright § 17.05; *see also id.* § 17.02 ("copyright laws do not have any extraterritorial operation"). Thus, even if it were based on a proper reading of the License, the Chinese ruling has no bearing here.

***Fourth***, the Chinese trial court's erroneous ruling is not a final judgment even under Chinese law. Because Microsoft timely appealed the judgment, it is not "legally effective." *See* Civil Procedure Law of the People's Republic of China, 2007 China Law LEXIS 5609, Art. 141 (adopted Apr. 9, 1991) ("All judgments and orders of the Supreme People's Court, as well as judgments and orders that may not be appealed against according to law or have not been appealed against within the prescribed time limit, shall be legally effective.").

***Fifth***, in any event, the Chinese trial court's ruling (even if it becomes final) cannot bind this Court. "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." *Hilton v. Guyot*, 159 U.S.

113, 163 (1895). "It is well-established that United States courts are not obliged to recognize judgments rendered by a foreign state." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178–79 (S.D.N.Y. 1995); *Crane v. Poetic Prods*., 351 Fed. App'x. 516, 518 (2d Cir. 2009) ("the courts of one sovereign are not strictly bound to honor judgments of the courts of another").

## IV.    CONCLUSION

For the foregoing reasons, defendants Microsoft and Walmart request that the Court dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.

Dated:  September 21, 2012

DAVIS WRIGHT TREMAINE LLP

By: */s/ Stephen M. Rummage*
Stephen M. Rummage (admitted *pro hac vice*)
Ambika K. Doran (admitted *pro hac vice*)
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Tel: (206) 622-3150
steverummage@dwt.com
ambikadoran@dwt.com

WILLIAMS & ANDERSON PLC
Teresa M. Wineland, Ark. Bar No. 81168
111 Center Street, 22nd Floor
Little Rock, Arkansas 72201
Tel:  (501) 372-0800
twineland@williamsanderson.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date stated below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>James M. Pratt , Jr.
>jamiepratt@cablelynx.com
>
>D. Matt Keil
>mkeil@kglawfirm.com
>
>John C. Goodson
>jcgoodson@kglawfirm.com
>
>Michael B Angelovich
>mangelovich@npraustin.com
>
>*Attorneys for Plaintiff*

Dated September 21, 2012.

By: */s/ Stephen M. Rummage*
Stephen M. Rummage