**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

| | |
|---|---|
| BEIJING ZHONGYI ZHONGBIAO ELECTRONIC INFORMATION TECHNOLOGY CO. LTD., <br><br> PLAINTIFF, <br><br> VS. <br><br> MICROSOFT CORPORATION AND WAL-MART STORES, INC., <br><br> DEFENDANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.  12-CV-4077 |

# REPLY IN SUPPORT OF DEFENDANTS'
# MOTION TO DISMISS UNDER RULE 12(b)(6)

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. ARGUMENT .......................................................................................................3

    A. A Copyright Claim Fails As a Matter of Law Where a License Permits the Accused Conduct. .....................................................................................3

    B. The Plain Language of the License Agreement Defeats Zhongyi's Copyright Claim and Requires Dismissal. ................................................5

        1. The License Contains No Restriction on Microsoft's Rights to Use the Fonts at Issue. ................................................................................5

        2. The Pre-License Memoranda, Even if Considered, Do Not Change the Plain Meaning of the License. ..............................................................7

        3. Zhongyi's Waiver and Estoppel Arguments Have No Merit. ...................9

    C. The Non-Final Chinese Trial Court Ruling, Applying Chinese Law to Chinese Copyright Claims, Does Not Bind this Court. .............................11

III. CONCLUSION ..................................................................................................16

## I.     INTRODUCTION

Defendants moved to dismiss Zhongyi's complaint because the plain language of the license agreement between Microsoft and Zhongyi permits the conduct on which Zhongyi bases its claim.[1]  Zhongyi's response avoids the language of that agreement, hiding behind the purported "binding" effect of the Chinese trial court's non-final ruling.  Tellingly, Zhongyi relegates its substantive discussion of the license to less than one-page at the end of its brief.  Resp. at 25-26.  And even then, Zhongyi ignores the license language, instead relying (as the Chinese trial court erroneously did) on prior—and superseded—memoranda of understanding.  *Id.*  Rather than address the plain language of the license agreement, Zhongyi makes the following arguments, none of which save its complaint from dismissal:

*First*, Zhongyi claims "the entirety of Defendants' Motion to Dismiss is a premature motion for summary judgment." *Id.* at 1, 7.  Not so.  A license provides a "complete defense" to a copyright infringement claim.  Courts therefore dismiss copyright claims under Rule 12(b)(6) where a license covers the alleged conduct.

---

[1] As explained in the Motion to Dismiss (Dkt. No. 27), Microsoft and Walmart agree the Court should reach this Motion *only* if the Court denies the motion to transfer this action to the United States District Court for the Western District of Washington.  Microsoft and Walmart respectfully suggest the transferee court should address the Motion to Dismiss, especially because Zhongyi's opposition to the substantive arguments in the Motion to Dismiss turns on its misinterpretation of the nuances of Washington contract law.  *See* Resp. at 25-26.

*Second*, Zhongyi insists it "clearly states a claim" simply because it recited the elements of a copyright claim. *Id.* at 9, 1, 7–8. But the plain language of the license, which is properly before the Court on this Motion, defeats the copyright claim. Because that agreement grants Microsoft a license to integrate the fonts into *any* Microsoft product, Zhongyi's copyright claim fails as a matter of law.

*Third*, Zhongyi claims this Court is "bound by" the non-final Chinese trial court ruling. *Id.* at 10–20. But the Chinese trial court's ruling is *not* "legally effective" even under Chinese law, as both Microsoft and Zhongyi have appealed. More fundamentally, the Chinese trial court applied *Chinese* contract law (not *Washington* law) to interpret the license. In doing so, it violated settled principles of contract interpretation, ignored the words of the license, and improperly relied—almost entirely—on prior memoranda superseded by the integration clause. Further, the Chinese court based its ruling on its finding that Zhongyi's fonts had protection under *Chinese* copyright law (not *U.S.* copyright law) and that Microsoft infringed those rights under *Chinese* copyright law (not *U.S.* copyright law). Because copyright laws have no extraterritorial operation, the Chinese court's findings under Chinese copyright law have no bearing on Zhongyi's claim under the *United States Copyright Act*, 17 U.S.C. §§ 101. Thus, this non-final ruling by Chinese trial court, applying the wrong law and based on rights unique to Chinese copyright law, cannot bind this Court.

## II.     ARGUMENT

### A.     A Copyright Claim Fails as a Matter of Law Where a License Permits the Accused Conduct.

Hoping to avoid the license's plain language, Zhongyi argues the Court cannot decide the agreement's scope on a motion to dismiss, claiming the issue "goes beyond a proper Rule 12(b)(6) motion." Resp. at 7, 8–9. In fact, courts can and do decide issues of this nature on motions to dismiss.

"A license is a complete defense to a claim of copyright infringement." *Unclaimed Prop. Recovery Serv. v. Kaplan*, 2012 WL 4195241, at *4 (E.D.N.Y. Sept. 19, 2012). "A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). "If Defendant had a license to make a particular use of a copyrighted work, defendant cannot have committed infringement." *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 749 (E.D. Mich. 1998). "Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities." *Bourne v. Walt Disney*, 68 F.3d 621, 631 (2d Cir. 1995). Where, as here, "the contested issue is the *scope* of a license, rather than the *existence* of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license." *Graham*, 144 F.3d at 236 (emphasis in original).

Zhongyi alleges the existence of its license agreements with Microsoft. Compl. ¶¶ 19, 20, 24.  Thus, "to state a claim upon which relief may be granted, [Zhongyi] must set forth sufficient facts alleging that [it] owned a valid copyright …, that the licenses issued to [Microsoft] were limited in scope, and that [Microsoft] exceeded that scope."  *Clifton v. Pearson Educ., Inc.*, 2012 U.S. Dist. LEXIS 61569, at *10–11 (N.D. Cal. May 2, 2012).  Here, the plain language of the License shows that Microsoft's use has not exceeded its scope.  As a result, Zhongyi's copyright claim fails as a matter of law and is subject to dismissal under Rule 12(b)(6).  *See, e.g.*, *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999) (affirming Rule 12(b)(6) dismissal of copyright claim where license granted defendants "the right to produce derivative works"); *Reinhardt v. Wal-Mart Stores, Inc.*, 547 F. Supp. 2d 346, 354 (S.D.N.Y. 2008) (dismissing copyright claim under Rule 12(b)(6) because the license's plain language "clearly authorizes the …uses employed by Defendants").[2]

---

[2] Zhongyi suggests the Motion to Dismiss improperly relies on matters outside the pleading, converting the motion into one for summary judgment. Resp. at 7.  In fact, the Eighth Circuit unequivocally allows consideration of the license:  "Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint."  *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).  So does the U.S. Supreme Court:  "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, ***documents incorporated into the complaint by reference***, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added).

### B.  The Plain Language of the License Agreement Defeats Zhongyi's Copyright Claim and Requires Dismissal.

Zhongyi insists "[t]here is no question [it] has adequately pled its copyright claims" because it recited the relevant elements.  Resp. at 7, 8-9.  But a pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, to state a copyright claim in this context, Zhongyi must allege facts showing "the licenses issued to [Microsoft] were limited in scope, and that [Microsoft] exceeded that scope."  *Clifton*, 2012 U.S. Dist. LEXIS 61569, at *10–11.  It cannot do so.

### 1.  The License Contains No Restriction on Microsoft's Rights to Use the Fonts at Issue.

The plain language of the license agreement (which Zhongyi ignores) grants Microsoft an unlimited license to integrate the fonts into *any* Microsoft product.  The operative portion of the license, Section 2.1, "**License Grant**," makes its unrestricted scope abundantly clear, in at least two ways:

*First*, the first two clauses of Section 2.1 grant Microsoft a license to "***use, modify, translate, and create derivative works*** based upon the *Fonts* in object and source code form; [and] ***reproduce, distribute or license*** (directly or indirectly), ***or sell***, rent or lease copies of the ***Fonts and/or derivative works*** thereof in object and

5

source code form." Rummage Decl., Ex. 3 ("License") § 2.1(i) & (ii) (emphasis added). The "Fonts" mean "the fonts developed by [Zhongyi] … having the features and functions set out in Schedule A." *Id.* § 1. Schedule A, in turn, describes those "Fonts" as the "ZhongYi SunTi and HeiTi True Type Font." *Id.*, Schedule A ¶¶ 1–3. These clauses grant Microsoft the right to use, copy, and sell the Zhongyi fonts —and any derivative works—*without any restriction*.

*Second*, the third clause of Section 2.1, further affirms Microsoft's right to make unrestricted use of the fonts, granting it a license to "do any other act in respect of the Fonts which is necessary in order for [Microsoft] to engage in the full commercial exploitation of *any* Licensed Product." *Id.* § 2.1(iii) (emphasis added). And the "Licensed Product" Microsoft may fully exploit includes "*each Microsoft software product* … into which the Fonts are integrated." *Id.* § 1 (emphasis added). Nothing anywhere in the license restricts its scope to specific Microsoft products; instead, the language negates any such restriction.

Because the plain language of the License grants Microsoft unrestricted rights to use the Fonts, Zhongyi's copyright claim cannot stand. *See*, *e.g.*, *Kennedy*, 187 F.3d at 695 (dismissing copyright claim where license gave defendants "the right to use, duplicate and disclose, in whole or in part, such materials in any manner for any purpose whatsoever"; "as the contract stands, it grants the defendants the right to use [plaintiff's work] for any purpose

6

whatsoever"); *Boosey & Hawkes Music Publrs., Ltd. v. Walt Disney Co.*, 145 F.3d 481, 488 (2d Cir. 1998) (rejecting copyright claim; "if the broad terms of the license are more reasonably read to include the particular future technology in question, then the licensee may rely on that language"); *Reinhardt*, 547 F. Supp. 2d at 354-55 (dismissing copyright claim because the license's plain language "clearly authorizes the …uses employed by Defendants," and such "unambiguous language forecloses other interpretations and the need to consider extrinsic evidence").

### 2. The Pre-License Memoranda, Even if Considered, Do Not Change the Plain Meaning of the License.

Refusing to confront the plain language of the License, Zhongyi instead argues "the MOU and Supplementary MOU must be considered in determining whether the 1995 Agreement precludes this suit" and urges that these documents "considered as a whole" support its claim.  Resp. at 26.

But Zhongyi's argument ignores the License's integration clause:  "This Agreement is the ***entire agreement*** by and among Microsoft, [China], and [Zhongyi] regarding its subject matter, and ***supersedes any prior agreements*** among the parties relating thereto."  License § 11.2 (emphasis added).  Thus, Microsoft, the Chinese Government, and Zhongyi *all* agreed the License represents the "entire agreement" among the parties and "supersedes any prior agreements," ***including*** the prior memoranda.  "Based on this unambiguous language, the License Agreement must be read to have incorporated or superceded [sic] any prior

7

understandings of the parties, and thus Plaintiff's attempt to focus on the [prior] Memo in order to avoid [the agreement's terms] is unavailing." *Cole v. John Wiley & Sons*, 2012 U.S. Dist. LEXIS 108612, at *31 (S.D.N.Y. Aug. 1, 2012).

Further, Zhongyi misstates Washington law by claiming the "context rule" set forth in *Berg v. Hudesman* 115 Wn.2d 657, 801 P.2d 222 (1990), allows the Court to insert restrictive terms into the License based on the memoranda, without any foundation in the words of the License. Resp. at 25-26. In fact, the Washington Supreme Court has rejected such efforts. Expressing concern that "[o]ur holding in *Berg* may have been misunderstood as it implicates the admission of parol and extrinsic evidence," that Court has clarified: "[S]urrounding circumstances and other extrinsic evidence are to be used to determine the meaning of specific words and terms used and ***not*** to show an intention independent of the instrument or to ***vary, contradict or modify the written word***." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (2005) (citation and internal quotations omitted) (emphasis added). The prior memoranda cannot, therefore, insert restrictive terms that modify and contradict the License's plain language.

Finally, even if the Court considered the memoranda, they do not change the License's scope. Zhongyi points to no words in the memoranda that ***limit*** the scope of the License; instead, Zhongyi merely highlights references in the MOU to

"Windows 95." *See* Resp. at 3-4.[3] But the fact the MOU specifically identifies by name only Windows 95—Microsoft's new operating system at the time—shows only that Microsoft had not yet named future versions of its Windows operating system. Recognizing that Microsoft would use the fonts in those future products, the MOU *required* Microsoft to "ensure that the Chinese version of Windows 95 is compatible with *future versions* of Microsoft Windows™ Chinese version." Rummage Decl., Ex. 1 § 7 (emphasis added). And the Supplemental MOU (which Zhongyi largely ignores)[4] contains similar provisions that, for example, *required* Zhongyi to provide "a license to Microsoft to use the relevant technology in *all Microsoft products*." *Id.* Ex. 2, App. A § B.2 (emphasis added).

### 3. Zhongyi's Waiver and Estoppel Arguments Have No Merit.

Zhongyi claims "Defendants have waived their ability to argue Washington law applies to this matter." Resp. at 21. In fact, in light of the Chinese trial court's tortured construction of the License agreement, Microsoft has specifically raised choice of law on appeal in the Chinese action. *See* Ex. C-6, Higher People's Court of Beijing Tr. at 11-12 (Dkt. 37-3). Zhongyi cites *nothing* suggesting Chinese law bars Microsoft (let alone Walmart) from raising Washington law on appeal in the

---

[3] Zhongyi twice asserts that the "MOU, Supplementary MOU, and the 1995 Agreement explicitly state the license granted to Microsoft was limited to the Microsoft Windows®95 Chinese language software." Resp. at 3 & 4. But it cites *nothing* to support those statements.

[4] Although Zhongyi states the "Supplemental MOU contains numerous similar references limiting the use of the fonts to the Windows® 95 product," Resp. at 4, it cites no such limitation.

9

Chinese action. And because that appeal is pending, Microsoft's purported failure to raise an issue in the Chinese action cannot preclude it from doing so here. *Cf. Radiation Sterilizers v. United States*, 867 F. Supp. 1465, 1475 n. 17 (E.D. Wash. 1994) ("a challenge to choice-of-law can be made for the first time on appeal").

Zhongyi's judicial estoppel argument likewise lacks merit. This doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Hampshire v. Maine*, 532 U.S. 742, 749 (2001). To apply, "a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* at 750. And "[a]bsent success in [the] prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations.'" *Id.* at 750-51 (citation omitted). Here, Microsoft has not changed positions; it has ***always*** argued the License covers all Microsoft products. Further, Microsoft did not succeed in the prior proceeding in China. Finally, the parties in the Chinese case did ***not*** brief, and the trial court did ***not*** raise, choice of law for contract interpretation. Wong Decl., Ex. A ("Chinese Ruling"), at 6–8 (Dkt. 30).[5] For several reasons, judicial estoppel does not apply.

---

[5] Zhongyi states Microsoft "specifically advised the Chinese Court that Chinese law applied," citing a reference to Regulations on the Protection of Computer Software. Resp. at 23. But those regulations concern Chinese ***copyright*** laws, which all parties agreed applied. Further, although Microsoft referred to Chinese contract law in its trial brief, Ex. C-5, at 8, it did so to support the simple point that the license was binding under Chinese law. Microsoft did ***not*** advocate interpreting the license under Chinese law concerning contract interpretation.

### C.  The Non-Final Chinese Trial Court Ruling, Applying Chinese Law to Chinese Copyright Claims, Does Not Bind this Court.

"No sovereign is bound, unless by special compact, to execute within his dominions a judgment rendered by the tribunals of another State." *Hilton v. Guyot*, 159 U.S. 113, 166, (1895).  Thus, "[i]t is well-established that United States courts are not ***obliged*** to recognize judgments rendered by a foreign state, but may ***choose*** to give res judicata effect to foreign judgments on the basis of comity." *Gordon & Breach Science Publrs. S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178-79 (S.D.N.Y. 1995) (emphasis in original).  Invoking this ***discretionary*** doctrine, Zhongyi claims the Chinese trial court ruling has "resolved" its claims and "binds" this Court.  Resp. at 9-21.  But the Chinese court ruling—now on appeal—applied Chinese law to Chinese copyright law claims.  Its non-final ruling on issues not before this Court did nothing to "resolve" Zhongyi's claims against Microsoft under U.S. copyright law and cannot "bind" this Court.

Zhongyi also breezes past the fundamental prerequisite to recognizing any foreign judgment:  it must be ***final***.  *See* Restatement (Third) of Foreign Relations Law § 481 (requiring a "final judgment").  As Zhongyi's own papers show, both Microsoft ***and Zhongyi*** appealed the trial court's rulings.  *See* Ex. C-6, Higher People's Court of Beijing Tr. at 1-2 (Dkt. 37-3).  With cross-appeals pending, that ruling cannot be "legally effective" even under Chinese law.  *See* Civil Proc. Law of the People's Republic of China, 2007 China Law LEXIS 5609, Art. 141.

11

Indeed, Zhongyi rests its misguided Motion to Stay on the express premise that the Chinese appeal may alter the trial court's ruling, conceding that ruling is ***not final***. *See* Mot. to Stay at 3 ("judicial economy would be served by staying this action pending a decision on the Chinese Appeal"). Thus, the non-final Chinese ruling has not even resolved Zhongyi's Chinese copyright claim under Chinese law.[6]

But even if the Chinese trial court ruling ultimately becomes final, it will not have preclusive effect on Zhongyi's claims here. "The burden of proof in establishing that the foreign judgment should be recognized and given preclusive effect is on the party asserting it should be recognized." *Shen v. Leo A. Daly Co.*, 222 F.3d 472, 476 (8th Cir. 2000). And "in order to apply the doctrine of collateral estoppel [to a foreign judgment], the court must determine that the issue in the pending litigation is identical to the issue in the previous litigation." *Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 473 (D.N.J. 2001). Even if

---

[6] Zhongyi half-heartedly urges the judgment against Microsoft must be final because Microsoft supposedly did not timely appeal, citing a colloquy in the Chinese appellate court. Resp. at 22 (citing Dkt. No. 37-3, Exs. C-6 at 17 & C-7 at 17). As that colloquy shows, the court agreed Microsoft had a written "express delivery order" documenting a timely filing, *id.*, and Zhongyi's Motion to Stay admits the appeal continues. Further, a careful reading of this colloquy shows the timeliness question affected only whether Zhongyi or Microsoft would be deemed the "appellant," since both appealed; on that point, the Chinese court explained that "the case filing chamber has decided that Microsoft is … the appellee." *Id*.

Zhongyi could show the Chinese ruling (when finalized) satisfies the factors for foreign judgment recognition,[7] it cannot show the ruling has preclusive effect:

*First*, in ruling on the License's scope, the Chinese trial court applied the wrong law (ignoring the Washington governing law clause) and violated fundamental principles of contract interpretation (resting its analysis on what it called the "special" memoranda preceding the License).  *See* Chinese Ruling at 8. "The effect to be given to foreign judgments is altogether a matter of comity." *Hilton*, 159 U.S. at 166.  And "comity never ***obligates*** a national forum to ignore '***the rights of its own citizens or of other persons who are under the protection of its laws***.'"  *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 943 (D.C. Cir. 1984) (quoting *Hilton*, 159 U.S. at 164) (emphasis by *Laker Airways*).  The Chinese trial court's erroneous rulings do not bind this Court.[8]

---

[7] Given the absence of a "final judgment," it would premature for the Court to decide whether the Chinese proceeding can satisfy the recognition factors, including whether it provides "a full and fair trial," "without prejudice or fraud," and "does not violate public policy."

[8] *See, e.g.*, *Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 177 (E.D.N.Y. 2003) (refusing to give preclusive effect to French court judgment:  "Because the present dispute requires resolution of complex issues of Russian law, this court is not bound to give effect to the legal interpretation of a French court …, [which] appears very obviously mistaken based on the more probative evidence of Russian law furnished to this court."); *Maersk, Inc. v. Neewra, Inc.*, 2010 WL 2836134, at *15 (S.D.N.Y. July 9, 2010) (refusing to give preclusive effect to Kuwaiti court rulings:  "It would be a miscarriage of justice to preclude Maersk from litigating in this forum as a result of what transpired in Kuwait."); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139, 141-42 (2d Cir. 2000) (affirming refusal to enforce a Liberian judgment:  "Liberia's courts did not constitute a system of jurisprudence likely to secure an impartial administration of justice").

*Second*, in ruling on Zhongyi's protectable copyrights, the Chinese trial court found Chinese copyright law protected "each individual Chinese character and font." Chinese Ruling at 6–7. But under U.S. copyright law, "[t]ypeface designs are *not* copyrightable." *Adobe Sys. v. S. Software, Inc.*, 1998 U.S. Dist. LEXIS 1941, at *11 (N.D. Cal. Feb. 2, 1998) (emphasis added). "[T]ypeface is an industrial design in which the design cannot exist independently and separately as a work of art." *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978). Thus, the fundamental premise of the Chinese trial court's ruling—that Zhongyi's fonts were subject to copyright protection under *Chinese* copyright law—does not apply to Zhongyi's copyright under the *U.S. Copyright Act*, 17 U.S.C. §§ 101.

*Third*, the Chinese trial court's rulings under Chinese copyright law for acts of alleged infringement in China have no application here. "The copyright laws of one country have no extraterritorial operation, unless otherwise provided." *Am. Code Co. v. Bensinger*, 282 F. 829, 833, (2d Cir. 1922); *Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088, 1095 (9th Cir. Cal. 1994) (same); 4-17 Nimmer on Copyright § 17.02 ("copyright laws do not have any extraterritorial operation").

*Fourth*, Zhongyi's authority does not show the Chinese ruling is entitled to preclusive effect. In fact, the cases on which Zhongyi relies show the opposite. In *Leo Feist, Inc. v. Debmar Publ'g Co.*, 232 F. Supp. 623 (E.D. Pa. 1964), for example, the court precluded plaintiff from relitigating a copyright claim rejected

14

by an English court, but only because that court "applied legal principles which, *if different at all, are only very slightly different* from those which would be applied in an American court." *Id.* at 624 (emphasis added). The English court found "*as a fact* that there was neither conscious nor subconscious copying," and plaintiff failed to "contest that *fact finding* in this court." *Id.* (emphasis added). Here, by contrast, Zhongyi seeks to enforce the Chinese court's *legal* conclusions based on *Chinese* contract law and *Chinese* copyright law, both of which differ significantly from the Washington contract law and U.S. copyright law that govern here.

The case Zhongyi cites as supporting enforcement of the Chinese judgment involved a final judgment and completely different facts. In *Hubei Gezhouba Sanlian Indus. Co.,Ltd. v. Robinson Helicopter Co., Inc.*, 2009 WL 2190187, at *1 (C.D. Cal. 2009), a California defendant successfully obtained a change of venue from California to China. After the transfer, however, it refused to appear at trial in China and failed to request a continuance or file an appeal. *Id.* at *2-3. Two years after the Chinese court ruled against the no-show defendant, plaintiffs asked a California court to enforce the Chinese judgment. The court recognized the judgment under the state's Uniform Foreign Money-Judgments Act, which applies to judgments that are "final, conclusive, and enforceable under the laws where rendered." *Id.* at *5. This action is nothing like *Hubei*, as Zhongyi has no "final" judgment, and no uniform judgment act applies to require its recognition.

15

### III. CONCLUSION

For the foregoing reasons, defendants Microsoft and Walmart request that the Court dismiss the Complaint with prejudice under Rule 12(b)(6).

Dated:  November 15, 2012

>DAVIS WRIGHT TREMAINE LLP
>
>By: */s/ John A. Goldmark*
>Stephen M. Rummage (admitted *pro hac vice*)
>Ambika K. Doran (admitted *pro hac vice*)
>John A. Goldmark (admitted *pro hac vice*)
>1201 Third Avenue, Suite 2200
>Seattle, WA 98101
>Tel: (206) 622-3150
>steverummage@dwt.com
>ambikadoran@dwt.com
>johngoldmark@dwt.com
>
>WILLIAMS & ANDERSON PLC
>Teresa M. Wineland, Ark. Bar No. 81168
>111 Center Street, 22nd Floor
>Little Rock, Arkansas 72201
>Tel:  (501) 372-0800
>twineland@williamsanderson.com
>
>*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date stated below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> James M. Pratt , Jr.
> jamiepratt@cablelynx.com
>
> D. Matt Keil
> mkeil@kglawfirm.com
>
> John C. Goodson
> jcgoodson@kglawfirm.com
>
> Michael B Angelovich
> mangelovich@npraustin.com
>
> *Attorneys for Plaintiff*

Dated November 15, 2012.

By: <i>/s/ John A. Goldmark</i><br>John A. Goldmark