IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


BEIJING ZHONGYI ZHONGBIAO
ELECTRONIC INFORMATION
TECHNOLOGY                                                                      PLAINTIFF


VS.                              CASE NO. 4:12-CV-4077


MICROSOFT CORPORATION and
WAL-MART STORES, INC.                                              DEFENDANTS


## ORDER

Before the Court is Defendants' Motion to Transfer. (ECF No. 22). Defendants seek to have this action transferred to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). Plaintiff has filed a response (ECF No. 38), and Defendants have replied. (ECF No. 41). The matter is ripe for the Court's consideration. For the reasons explained below, the Court grants Defendants' motion.

## BACKGROUND

This case involves a copyright dispute arising from a licensing agreement between Plaintiff Beijing Zhongyi Zhongbiao Electronic Information Technology ("Zhongyi") and Defendant Microsoft. Zhongyi is a Chinese company based in the People's Republic of China, while Microsoft is incorporated and headquartered in the state of Washington. Defendant Wal-Mart is a part of this litigation because it is a downstream retailer of the alleged infringing products designed and manufactured by Microsoft. Wal-Mart is based in the state of Arkansas.

In 1995, Zhongyi and Microsoft entered into a licensing agreement to allow Microsoft to use two Chinese language type fonts in certain Microsoft products (the "1995 Agreement"). Zhongyi claims that these type fonts are copyrighted under the U.S. Copyright Act. It also asserts that the 1995 Agreement provided for Microsoft's use of the Chinese fonts only in the 1995 edition of Microsoft's products, such as Windows 95. Zhongyi argues that Microsoft has exceeded the scope of that agreement by using the Chinese fonts in its more recent products, including Windows 98, Windows 2000, Windows 2003, and Windows XP. By exceeding the scope of the agreement, Zhongyi contends that Microsoft has infringed upon its copyright.

Microsoft seeks to have this action transferred to the Western District of Washington for four reasons. First, it claims that the Washington forum is more convenient for the parties because Microsoft is headquartered in Washington and most of the witnesses and evidence are located in the state, particularly the persons and documents related to the 1995 Agreement. Second, it argues that Zhongyi is a foreign plaintiff that will have to travel to litigate this matter regardless of venue, and thus, it will not be prejudiced by the transfer. Third, it contends that the alleged misconduct originated at Microsoft's corporate headquarters in Washington, which favors transfer to that state in the interest of justice. Finally, Microsoft asserts that in the 1995 Agreement, the parties agreed that Washington law would apply to any dispute, and they consented to jurisdiction in the state. Microsoft therefore maintains that the Western District of Washington is the most appropriate forum to apply Washington law.

Zhongyi argues to the contrary on several grounds. It first contends that transfer is improper because deference should be accorded to the plaintiff's choice of forum. Zhongyi asserts that it chose the Arkansas forum because Wal-Mart, one of the Defendants, is headquartered in Arkansas, and one of Zhongyi's affiliate companies has an office here. It also

claims that Microsoft's status as an international company minimizes any notion that Arkansas is an inconvenient forum. Zhongyi further points out that the 1995 Agreement was executed in Bejing, China, not the state of Washington.

In addition to Zhongyi's arguments related to the propriety of its choice of forum, it claims that a separate consideration forecloses Microsoft's desire to have this case transferred. Before filing this lawsuit, Zhongyi filed a lawsuit against Microsoft in the Intermediate People's Court of Beijing for The People's Republic of China asserting the same allegations of copyright infringement as it does here. The Chinese court ruled in Zhongyi's favor, and in doing so, interpreted the parties' 1995 Agreement as being limited in scope. The court found that the agreement only provided a license to Microsoft for its 1995 products, and not the later product editions as Microsoft contended. On appeal, the Higher People's Court of Beijing of The People's Republic of China affirmed the lower court's ruling.

In light of the Chinese action, Zhongyi argues that Microsoft is precluded from re-litigating the scope of the 1995 Agreement. Thus, Zhongyi contends that any evidence located in the state of Washington that is related to the 1995 Agreement, or its scope, need not be considered in the Court's transfer analysis because it is no longer relevant evidence in the case. Zhongyi asks the Court to give the Chinese ruling preclusive effect and thereby render as moot Microsoft's argument that the Washington forum is more convenient because of the evidence located there.

## DISCUSSION

Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." "To succeed

on a motion to transfer, the moving party must show that venue is proper in both the transferor and transferee districts, and that transfer serves the convenience of the parties, convenience of witnesses, and interests of justice." *Shared Memory Graphics LLC v. Apple Inc.*, No. 5:09-cv-5128, 2010 WL 5151612, at *1 (W.D. Ark. May 27, 2010).

In this case, it is undisputed that the action could have been brought initially in the Western District of Washington; Microsoft is headquartered there. *See* 28 U.S.C. § 1400(a). Therefore, whether a transfer is warranted turns on an analysis of the conveniences of the parties and witnesses and the interests of justice. The Court is not limited, however, to considering only those factors. *Shared Memory Graphics LLC*, 2010 WL 5151612, at *1. Indeed, district courts "enjoy wide discretion when determining whether to transfer." *Id.* (citing *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 691 (8th Cir.1997)). The Court may consider "any other factors or circumstance that may be relevant to determine if a transfer is warranted." *Crabb v. GoDaddy.com, Inc.*, No. 07-cv-4040, 2010 WL 5890625, at *2 (W.D. Ark. Mar. 29, 2010) (citing *Terra Int'l, Inc.*, 119 F.3d at 696).

The Court will address these relevant factors below. At the outset, though, the Court takes note of the preclusion issue raised by Zhongyi in relation to the Chinese action.

## I.      Impact of the Chinese Action

Zhongyi argues that if the parties are precluded from relitigating the scope of the 1995 Agreement, in light of the Chinese action, then the issues in this case become quite simple. It suggests that there will be no need for the parties, or the Court, to resort to any evidence that Microsoft claims is located in Washington since it has already been decided that Microsoft exceeded the scope of the license in the 1995 Agreement. Because the Chinese court ruled that Microsoft's use of the Chinese fonts was unauthorized, Zhongyi claims that the only remaining

issue for this Court is whether those fonts are protected by copyright. While Zhongyi's summary of the issues may be correct—assuming the Court accords preclusive effect to the Chinese action—it over simplifies the matter.

This is a copyright dispute over type fonts. Within the meaning of U.S. Copyright Act, fonts—like those used by Microsoft—are generally construed in one of two ways: typeface designs or computer programs. *Adobe Systems Inc. v. Southern Software Inc.*, No. C 95-20710, 1998 WL 104303, at *3 (N.D. Cal. Feb. 2, 1998). Typeface designs are not copyrightable subject matter. *Id.* (citing *Eltra Corp. v. Ringer,* 579 F.2d 294, 298 (4th Cir.1978)). Computer programs, on the other hand, are protected literary works. 17 U.S.C. § 102(a); *Adobe Systems Inc.*, 1998 WL 104303, at *3. This distinction between unprotected digitized typefaces and protectable computer software programs is likely an issue that the Court will have to address going forward. To make that distinction properly, the Court, or a jury for that matter, will certainly have to review the parties' 1995 Agreement and any other documents regarding the development and technical makeup of Microsoft's alleged infringing products.

Therefore, assuming without deciding that the scope of the 1995 Agreement cannot be relitigated in light of the Chinese action, the agreement is still of practical importance to the outcome of the case. Because it is still relevant, the Court must consider it under the transfer factors analyzed below. Zhongyi's preclusion argument, by itself, does not bar the transfer of this matter to the Western District of Washington. Accordingly, the Court will weigh the factors prescribed in 28 U.S.C. § 1404(a) to determine if transfer is appropriate.

## II.   Convenience Factors

Section 1404(a) first calls for a consideration of the conveniences of the litigation. These convenience factors include: "(1) the convenience of the parties, (2) the convenience of the

witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 691 (8th Cir. 1997). "These factors do not apply in every case, and some factors that do apply predominate over others in the transfer analysis." *R&R Packaging, Inc. v. J.C. Penney Corp., Inc.*, No. 5:12-cv-5215, 2013 WL 773455, at *7 (W.D. Ark. Feb. 28, 2013).

Applying these factors to the circumstances of this case, on balance, they suggest that the Western District of Washington is the more appropriate forum. As for the convenience of the parties, Washington is of course more convenient for Microsoft. But more importantly, Washington does not appear to be any less convenient for Zhongyi than Arkansas. Zhongyi is an international plaintiff from China that will be forced to travel a great distance whether this action takes place in Arkansas or Washington.

The same is true for the potential witnesses and documentary evidence in this case. Virtually every witness or piece of documentary evidence will come from either the state of Washington or China, not Arkansas. Microsoft has submitted affidavits stating that none of its current or former employees who might have knowledge regarding this case reside in Arkansas. Also, the documents related to Microsoft's design and manufacture of the alleged infringing products are located in Washington.

The fact that the 1995 Agreement was executed in China rather than Washington, as Zhongyi contends, has little impact on the transfer analysis. Zhongyi does not contend that Microsoft infringed its copyright in the Chinese fonts immediately upon executing the 1995 Agreement. Rather, it alleges that Microsoft exceeded the scope of that agreement at a later date

when Microsoft chose to include the Chinese fonts in the later editions of its products. And the witnesses and documents related to that alleged misconduct appear to be located in, or in close proximity to, the state of Washington.

Furthermore, while Zhongyi claims to have a connection to the state of Arkansas through an affiliate company that maintains an office here, that affiliate company's relationship to this case is weak at best. Zhongyi does not contend that a single witness or piece of relevant evidence will come from its affiliate company's Arkansas office. That affiliate company is also not a party to this litigation.

Indeed, the only connection that this case has to the state of Arkansas is Wal-Mart's presence as a defendant. However, Wal-Mart is only a party to this litigation by virtue of Microsoft's alleged misconduct, which originated at its corporate headquarters in Washington— another factor favoring the Washington forum. *Terra Int'l, Inc.*, 119 F.3d at 696. Wal-Mart was not involved in any aspect of the 1995 Agreement, and it is nothing more than a downstream retailer of the alleged infringing products manufactured by Microsoft. In other words, it is only peripherally involved in the case.[1]

Without more, Wal-Mart's involvement in the litigation does little to tip the convenience factors in favor of the Arkansas forum. *See Gold v. Burton Corp.*, 949 F.Supp. 208, 210 (S.D.N.Y. 1996) (finding that when a separate defendant, who has no real connection to the case, except for being downstream of the real defendant in the distribution chain, is brought in to a lawsuit for the manifest purpose of insisting on an inconvenient venue with which the plaintiff himself has no genuine tie, transfer is proper).

---

[1] Microsoft maintains that "because Microsoft (not Walmart) chose the Chinese fonts to integrate into Microsoft's products, Microsoft will be defending and indemnifying Walmart for any liability arising from sales of those products." (ECF No. 23).

Upon considering the limited allegations against Wal-Mart, its complete lack of involvement in Microsoft's underlying infringing activity, the number of likely witnesses and evidence located in the state of Washington, and Zhongyi's lack of a genuine tie to the state of Arkansas, the Court finds that § 1404(a)'s convenience factors weigh in favor of transferring this case to the Western District of Washington.[2]

### III.    Interests of Justice Factors

Considerations relevant to the interests of justice under § 1404(a) include the plaintiff's choice of forum, judicial economy, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflicts of law issues, and the advantages of having a local court determine questions of law. *Terra Int'l, Inc.*, 119 F.3d at 696.

In this case, Zhongyi seeks to avoid transfer by relying heavily on the first factor, arguing that its choice of forum should be accorded great deference. The Eighth Circuit, however, has recently addressed the choice of forum issue in detail and found that, in certain circumstances— like those presented here—a plaintiff's choice of forum is given less weight. *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010). The court reasoned that:

> [i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted. This general practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one. When the plaintiff…hails from a foreign nation, that assumption is much less reasonable, and the risk that the plaintiff chose the forum to take advantage of favorable law or to harass the defendant increases.

---

[2] As an additional matter, it is worth noting that the parties' 1995 Agreement provides for the application of Washington law to any dispute arising from the agreement. In light of the Chinese action, however, the Court is mindful of the preclusion issue related to the scope of that Agreement, which might render such an application of Washington law unnecessary. But that issue remains to be decided. As the Court has explained, the preclusion issue does not affect the propriety of Defendants' motion to transfer. Indeed, the issue is more pertinent for Defendants' pending Motion to Dismiss. (ECF No. 27). Therefore, in the event that the Court declines to give preclusive effect to the Chinese action, the choice of law provision in the 1995 Agreement presents another factor in favor of transferring this case to the Western District of Washington where the court may apply its own state's laws.

*Id.* (internal citations and quotations omitted). The court went on to hold that because no relevant connection existed between the forum state and the plaintiff, defendant, potential witnesses, or the dispute, the plaintiff's choice of forum was entitled to minimal weight.

A similar case exists here. Zhongyi is a foreign plaintiff whose only connection to Arkansas is an affiliate company that has nothing to do with this lawsuit. Microsoft's only connection to Arkansas comes through its downstream distribution chain. None of the potential witnesses live in or around Arkansas. And the principle dispute in this case arose out of the state of Washington and China. In other words, Microsoft has rebutted any assumption that Zhongyi's choice of forum is a convenient one. Therefore, Zhongyi's choice of forum is entitled to minimal weight.

Judicial economy also favors transfer. As a practical matter, "the administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts." *Thorton Drilling Co. v. Stephens Production Co.*, No. 4:06-cv-00851, 2006 WL 2583659, at *4 (E.D. Ark. Sept. 6, 2006). Here, the operative facts, particularly those surrounding Microsoft's manufacture and distribution of the alleged infringing products, occurred in Washington. Therefore, it is reasonable to conclude that this dispute will be litigated more efficiently there.

As for the interest of justice factors related to the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, and the obstacles to a fair trial, such factors provide little guidance under the circumstances of this case.

However, the remaining factors, regarding any conflicts of law issues and the advantages of having a local court determine questions of law, suggest that Washington is the most appropriate forum. In the 1995 Agreement, the parties both consented to jurisdiction and agreed

9

that Washington law would apply to any dispute arising from the agreement. Because the preclusion issue presented by Zhongyi remains to be resolved, the conflicts of law issue presented in that agreement and the opportunity for a local court to determine issues of Washington law remain important considerations favoring transfer. Accordingly, the Court finds that the interest of justice factors under § 1404(a) favor transfer to the Western District of Washington.

## CONCLUSION

For the reasons explained above, the Court finds that Defendants' motion to transfer (ECF No. 22) should be and hereby is **GRANTED**. This action is transferred to the Western District of Washington. Accordingly, the Clerk of Court is directed to transfer this action immediately to the United States District Court for the Western District of Washington for all further proceedings.

**IT IS SO ORDERED**, this 22th day of July, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

10